[No. 13762. Department Two.— January 30, 1891.]

## H. L. WILLIAMS, RESPONDENT, *v.* J. G. MITCHELL ET AL., APPELLANTS.

VENDOR AND PURCHASER — FRAUDULENT REPRESENTATIONS OF VENDOR'S AGENT — KNOWLEDGE OF VENDEE — CONFLICTING EVIDENCE — REVIEW ON APPEAL. — Where alleged fraudulent representations in the sale of land are claimed to have been made by the agent of the vendor, and the evidence shows that the vendee had means of knowledge as to the facts, and is conflicting as to whether the representations were made, a finding that there was no fraud on the part of the vendor will not be disturbed on appeal.

ID. — MORTGAGE FOR PURCHASE-MONEY — FAILURE OF CONSIDERATION — INVALIDITY OF WATER CERTIFICATES.— The fact that "water certificates" of a water company, forming part of the property sold, are invalid, does not constitute a partial failure of the consideration of a note and mortgage given for the purchase-money, if the water company has not failed or refused to furnish the water in conformity with the certificates, and is ready and willing to perform its obligation.

ID. — RESCISSION BY PURCHASER — UNREASONABLE DELAY. — The rescission by the purchaser of an executed contract for the sale of land and water certificates on the ground that the water certificates are void, and that the consideration has failed, must be made with reasonable promptness; and a delay of seventeen months after the purchase, and until two months after the commencement of a suit to foreclose a mortgage given for the purchase-money, before offering to rescind, is unreasonable.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion.

*Waters & Gird, Allen & Miller,* and *Harris & Gregg,* for appellants.

The water certificates are void, because issued gratuitously, and constituting a fictitious increase of indebtedness of the water company (Const., art. 12, sec. 11), and because representing a withdrawal of part of its capital stock. (Civ. Code, sec. 309; *Martin* v. *Zellerbach,* 38 Cal. 300; 99 Am. Dec. 365; Morawetz on Corporations, secs. 443–457.)

*G. E. Harpham,* and *H. M. Willis,* for Respondent.

The validity of the water certificates is not involved in the issues. Defendants' right to rescind, if it ever existed, has been lost by laches. (Civ. Code, sec. 1691; *Gifford* v. *Carvill,* 29 Cal. 593; *Blen* v. *Bear River etc. Co.,* 20 Cal. 615; 81 Am. Dec. 132.)

VANCLIEF, C.—On June 11, 1887, the plaintiff sold and conveyed to the defendants six lots of land containing twenty acres each, and at the same time assigned to the defendants certain written obligations of the Bear Valley Land and Water Company (a corporation), to furnish and deliver at a certain point a certain quantity of water to be used on each of said lots, called "water certificates." The consideration to be paid by the defendants for the land and water certificates was twenty-four thousand dollars, of which six thousand dollars was paid in hand. For the balance of the purchase-money the defendants made two promissory notes to the plaintiff, of nine thousand dollars each, secured by their mortgage on said land. This action is brought to foreclose the mortgage.

The answer of the defendants admits the execution of the notes and mortgage, and then proceeds as follows:—

" 2. That said notes and mortgage were executed and delivered as and for part of the purchase-money of said real estate in complaint described, together with certain water rights by plaintiff represented as appurtenant thereto, as well as for certain shares of stock in the Bear Valley Land and Water Company, a corporation organized and existing under the laws of the state of California, and for no other or further consideration.

" 3. That said defendants were induced to so purchase said lands and stock, and to execute and deliver said notes and mortgage, by means of false and fraudulent representations at the time and before that time made by plaintiff to defendants, in this, to wit: That at and before the purchase of said real estate, appurtenances, and shares of stock, the said plaintiff, by and through his duly authorized agent, represented to defendants that water for irrigation purposes was actually piped on said land from the reservoirs of said Bear Valley Land and Water Company; that the right to use twelve miners' inches of said water was appurtenant to said land; that plaintiff would transfer and deliver to defendants shares of stock in said Bear Valley Land and Water Company representing ownership of twelve miners' inches of water of said corporation; that plaintiff owned the land lying immediately adjacent to the premises in complaint described; that upon said lands plaintiff would at once cause to be constructed a large hotel building at a cost of twenty thousand dollars, and numerous private dwellings; that the materials to be used in their construction were already purchased by plaintiff, and the contract for the erection thereof let.

"4. Defendants, relying upon such representations, and believing them to be true, and on the faith thereof, purchased said premises in complaint described, and said stock of plaintiff, and on the 11th of June, 1887,

accepted from plaintiff a deed therefor, with six certain instruments in writing, issued under the seal of said Bear Valley Land and Water Company and signed by its president and secretary, denominated water certificates, and in consideration thereof paid to plaintiff six thousand dollars in cash, and executed the notes and mortgage as in complaint set out and described.

"5. That at the date of the acceptance of said deed and said water certificates, defendants believed that said water certificates were in fact shares of stock in said corporation, and entitled the defendants, as holders thereof, to the rights and privileges of stockholders in said corporation, and conveyed to defendants the rights and privileges so contracted to be conveyed and transferred by plaintiff to twelve miners' inches of water of said corporation.

"6. Defendants allege that notwithstanding said promises and representations of plaintiff, that neither at the time of said purchase, or now, or at any time, or at all, was any water piped on said land from the reservoir of said Bear Valley Land and Water Company, nor from any water supply or source, and no pipes for conveying water were laid on said land at all, nor in the vicinity thereof.

"7. That in truth and in fact no water rights were appurtenant to said lands, and no hotel building or private dwellings, or structures of any kind, have been erected on said adjacent lands, in whole or in part, except a certain excavation alleged to be for a basement for a hotel, although more than one year has elapsed since said purchase, and no steps have been taken by plaintiff to cause said improvements, or any of them, to be made on said adjacent lands, although he has ever since remained and still remains the owner and holder thereof.

"8. That said lands were at the date of said purchase, and now are, irrigable lands, and without water rights

appurtenant, or water for use in irrigation, are of little value, and worth less than five thousand dollars; that water rights appurtenant to such lands, for purposes of irrigation, would be valuable, and worth six thousand dollars, and more; that shares of stock in said Bear Valley Land and Water Company representing twelve miners' inches of water would be of great value, to wit, of the value of five thousand dollars, and more; that the erection and construction of said hotel buildings and private dwellings as agreed upon would enhance the value of said premises ten thousand dollars, and more; that without said improvements on said lands adjacent, the premises so purchased by defendants are worth ten thousand dollars less than with such improvements made as represented.

"9. Defendants are informed and believe, and therefore allege the fact to be, that said written instruments styled water certificates issued by said corporation to defendants were and are issued without authority of law, and are void; that said corporation had no authority in law to issue the same, and the issuance of the same conveyed and transferred no rights as stockholders or otherwise to defendants; that the same are not shares of stock, and do not transfer or vest in the defendants the privileges or rights of stockholders, and do not convey or vest in defendants twelve miners' inches of water of said corporation, or any water or rights whatsoever, and the same are of no value; and defendants allege that they were ignorant of the true character and value of said written instruments styled water certificates, until the commencement of this action; and defendants further allege that plaintiff never transferred, conveyed, or attempted to convey, to said defendants any of said water rights or shares of stock in said Bear Valley Land and Water Company whatever.

"10. Defendants allege that the acts, omissions, and representations of plaintiff above set forth were done

and made by him with intent to defraud, and that he thereby did defraud, defendants of their rights in the premises.

"11. Defendants allege further, that by reason of the acts, omissions and representations, practices and fraud, of plaintiff, as above set forth, the consideration for said notes in complaint mentioned has wholly failed, and the same were obtained by fraud, and wholly without consideration, and plaintiff should not maintain his action thereon."

The defendants also filed what they denominate "a further answer to complaint, and by way of cross-complaint," in which they allege, substantially, the same facts alleged in their answer, with only the additional averment that on December 13, 1888 (nearly two months after the commencement of this action), the defendants tendered to plaintiff a reconveyance of the land and reassignment of the water certificates, and demanded a surrender and cancellation of the notes, and a return of the cash payment of six thousand dollars, all of which was rejected and refused by the plaintiff. The prayer of the cross-complaint is, that the notes be canceled, and that defendants have judgment against the plaintiff for the six thousand dollars paid, and interest.

The water certificates and the indorsements thereon are in the following form:—

"(Class A. 7,200 certificates. Issue of June 1, 1886. No. 118. Number of certificates, 20.)

"Bear Valley Land and Water Company water certificate.

"These twenty certificates, issued by the Bear Valley Land and Water Company, a corporation, to Rhodes, Mitchell & Hoopes, for twenty acres, are guaranteed by said company to entitle the holder hereof to receive a continuous flow of one seventh of an inch of water to each acre of land to which the same shall be devoted, or multiple thereof, as is designated on the face hereof, for the six summer months in each year, for the contract

times beginning under the contracts of this company with the North and South Fork ditches, respectively. The inch mentioned herein is equivalent to a flow of one fiftieth of a cubic foot per second. The holder of this certificate may elect to accumulate the use of water hereunder in any one or more months of said six months, the aggregate in any one month not to exceed one fourth of the whole for that year, and the holder is also entitled to his proportion of the six months' winter water accruing under the contracts of the North or South Fork ditches, on which it may be used in the proportion which this issue of certificates and those that may be hereafter issued bears to the whole of such benefits. The point of delivery of water used under this certificate shall be at the points designated in the contracts with the North and South Fork ditches, respectively. This issue or award of water is adopted as a method of distribution and of the use of the same to the company's stockholders in consideration of the covenants contained in the indorsement hereon; and the interest represented by this certificate shall not become appurtenant to or pass by voluntary act or by operation of law with any land upon which the water represented may be used. A transfer hereof shall only be made by surrender of this certificate to the company and the reissuance of a new certificate, and upon the signature of the concurrent contract on the records of the company.

"J. G. BURT, President.

[Seal of said company.]       "E. A. HOLT, Secretary."

Indorsement: "The holder of this certificate hereby accepts the same on the following conditions: That this certificate shall and is to be held subject to and in accordance with the terms of the contract signed by the holder hereof upon its issuance by the company."

The contract mentioned in the indorsement on the certificate to be signed by the holder was signed by the defendants on July 7, 1887, and is as follows:—

"Know all men by these presents, that whereas, the Bear Valley Land and Water Company, a corporation, has this day issued to the undersigned, Rhodes, Mitchell & Hoopes, twenty certificates of said corporation, being certificate No. 113, in consideration of the agreements hereinafter contained, and subject to the conditions hereinafter set forth and contained in said certificate, and the undersigned has received and accepted said water certificates subject to all such agreements and conditions,—

"Now, therefore, we hereby agree that in consideration of the issuance of said water certificates to us by said corporation, and in payment for the water which said certificates entitle us to receive each year from said corporation in acccordance with the provisions of said certificate,—

"We will, without notice or demand, pay to said corporation annually hereafter, and within thirty days after the first day of January in each year, the sum of twenty dollars, being one dollar per year on each of said water certificates, such payment to be made at the office of said corporation in the city of San Bernardino, state of California;

"And if said sum of twenty dollars be not paid to said corporation in full, at the time and in the manner hereinbefore provided, then said certificate No. 113, and all covenants and agreements therein contained, and the water certificates therein referred to, shall become and be null and void, and all rights thereunder shall be forfeited and shall forever cease and determine, and the foregoing contract shall be void;

"And whenever said certificate No. 113 shall be surrendered to and canceled by said corporation, then the foregoing contract shall be void.

"In witness whereof we have hereunto set our hands and seals this seventh day of July, A. D. 1887.

' "Rhodes, Mitchell & Hoopes.
"By C. H. Condee, Agent."

The court found for the plaintiff on all the issues, and decreed a sale of the mortgaged property in the usual form, and the defendants appeal from the final decree, and from an order denying their motion for new trial.

1. The appellants contend that the findings which negative the fraudulent misrepresentations charged in the answer and cross-complaint are not justified by the evidence. It will be observed that the averments are that the plaintiff made the false and fraudulent representations by his agent. The evidence shows that the alleged agent was C. P. Condee, whose authority, if he had authority, extended no further than to find a purchaser of the property at a fixed price, and who, in his testimony on the trial, denied that he ever represented that water was piped or conducted to or upon the land sold; or that the right to the use of any water was appurtenant to the land otherwise than as expressed in said water certificates; or that plaintiff would assign to defendants any shares of stock in the water company corporation other than said water certificates, though he may have called those certificates water stock; or that any contract for the erection of a hotel or other buildings had been made by the plaintiff. Such representations as were made by Condee before the sale were first made to the defendant Rhodes (who was acting for the other defendants) at a place on the land where Condee is charged with having falsely represented that the water was then piped, yet there was nothing on the land to indicate that there was either pipe or water anywhere upon it. The water certificates, in the form above set out, were indorsed by the plaintiff and delivered to the defendants' agent, with deed for the land, on June 11, 1887, and received by defendants on July 11, 1887. It is admitted that defendants knew no water had been piped on the land as early as October, 1887, and the evidence strongly tends to show that the defendant Hoopes must have known the same in July, 1887; yet

the defendants made no offer to rescind until December, 1888, about two months after the commencement of this action.   There is no evidence nor pretense that the plaintiff personally made any false representation whatever.

As the defendant Rhodes testified that he had been in the real estate business a number of years, and had personally visited and examined the land on two occasions before he made the purchase, it is difficult to understand how he could have been deceived by the alleged representations of Condee as to water being piped on the land at the times he examined it, when he saw no signs of pipes, water, or hydrants, and asked no questions as to where they were; and it is still more difficult to conceive how the defendants could have been deceived as to the purport or nature of the water certificates at the time they accepted those certificates with the deed for the land.   Considering these circumstances, which, to some extent, justify the application of the maxim *caveat emptor*, in connection with the testimony of Condee, which denies all the material misrepresentations charged, I think the finding that there was no fraud on the part of the plaintiff is justified by the evidence.

2. Appellants contend that the water certificates are void and of no value, because,—1. "They were issued gratuitously, and consequently amounted to a fictitious increase of the indebtedness of the company"; and 2. They "represent or evidence a division and withdrawal and payment to the stockholders of a part of the capital stock of the company"; and therefore, to the extent of the value of the water, the consideration for the notes and mortgage failed.

There is no pretense that the water company has failed or refused to furnish or deliver the water as per certificates, or has denied its obligation to do so; and the only evidence relating to the matter is to the effect that the water company regards the certificates as valid obliga-

tions which it has always been ready and willing to per-
form, but it is claimed that their invalidity "is stamped
upon their face."

While I am inclined to the opinion that the certifi-
cates are valid for what they purport to be, I think it
unnecessary, and certainly not desirable, to decide the
question in this case, to which the water company is not
a party.

As counsel claim that the alleged invalidity of the
water certificates appears upon their face, and have
pointed to no extraneous fact on which it depends or
from which it may be inferred, the defendants must
have known all the facts touching such invalidity on
July 11, 1887, when they personally received the certifi-
cates, and were informed by Mr. Condee that he, as their
agent, had executed for them the agreement above set
out,—to pay the water company twenty dollars a year.
It is not denied that Condee was authorized to execute
this agreement. Under these circumstances, if the de-
fendants desired to rescind their purchase on the sole
ground that the water certificates were void (and it ap-
pears that they had no other ground), they should have
offered to rescind promptly, within a reasonable time.
A delay of seventeen months, and until two months
after the commencement of this action, and thirty-eight
days after the appearance of the defendant Rhodes, was
unreasonable.

The other points made by appellants' counsel require
no special consideration, as those of them which are not
founded upon a misconception of facts have no bearing
upon the merits of the case as viewed here.

I think the judgment and order should be affirmed.

FOOTE, C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing
opinion, the judgment and order are affirmed.

Hearing in Bank denied.